**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANNA CONOVER, PARRISH AND JACQUELINE SHERIDAN, BRYAN AND JACQUELINE VAN VELSON, | : <br> : **Civil Action No.:** <br> : <br> : |
| *Plaintiffs*, | : <br> : |
| v. | : <br> : **CLASS ACTION COMPLAINT AND** <br> : **DEMAND FOR JURY TRIAL** |
| PATRIOT LAND TRANSFER, LLC, PATRIOT LAND PROCESSING, LLC, WELLS FARGO BANK, N.A., | : <br> : <br> : <br> : |
| *Defendants*. | : <br> : |

Plaintiffs Anna Conover, Parrish and Jacqueline Sheridan, and Bryan and Jacqueline Van Velson, on behalf of themselves and on behalf of the entire class of persons similarly situated, by and through their attorneys, hereby file this Class Action Complaint and state as follows:

## INTRODUCTION

1.      Plaintiffs are borrowers who currently have or had a federally related mortgage loan, as defined by 12 U.S.C. § 2602, which was or is secured by Plaintiffs' residential real property.  For the purposes of procuring title insurance and to facilitate the escrow and settlement process, Plaintiffs used Patriot Land Transfer, LLC (also /d/b/a Patriot Land Transfer of NJ, LLC) or Patriot Land Processing, LLC, (collectively, the "Patriot Defendants") as a result of

their lender or mortgage broker's referral thereto.

2.     Plaintiffs and Class Members were victims of an illegal kickback scheme ("Patriot Kickback Scheme") whereby Wells Fargo Bank, N.A. ("Wells Fargo"), its corporate management, branch managers, loan officers (known as home mortgage consultants ("HMCs")) and/or other employees and/or agents directly or indirectly received unearned fees, things of value and kickbacks paid by the Patriot Defendants in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"). These kickbacks were paid pursuant to a quid pro quo agreement for kickbacks in exchange for the referral of Wells Fargo borrowers to the Patriot Defendants for settlement services. Neither Wells Fargo nor any of their employees and/or agents receiving the kickbacks performed any title or settlement services associated with the kickbacks. Plaintiffs believe, and therefore aver, that the Patriot Defendants had kickback agreements with other lenders and/or mortgage companies (collectively, with Wells Fargo, the "Participating Lenders") to refer their borrowers to the Patriot Defendants. Plaintiffs reserve the right to amend this Complaint to add other Participating Lenders as defendants.

3.     These kickbacks, and Defendants' coordinated business relationship, were fraudulently concealed by the Participating Lenders and the Patriot Defendants from Plaintiffs and Class Members and were omitted from Plaintiffs and Class Members' HUD-1s and other required loan documents in an effort to hide the kickbacks and the Patriot Kickback Scheme from Plaintiffs and Class Members.

## **PARTIES**

4.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 as a class action on their own behalf and on behalf of the entire class of people similarly situated that is defined in paragraphs 70 and 71, below.

2

5.      Plaintiff Anna Conover is a citizen and resident of Atlantic County, New Jersey, and lives at 238 Main Avenue, Milmay, New Jersey.

6.      Plaintiffs Parrish and Jacqueline Sheridan are citizens and residents of Monmouth County, New Jersey, and live at 213 Fairway Lane, Neptune, New Jersey.

7.      Plaintiffs Bryan and Jacqueline Van Velson are citizens and residents of Monmouth County, New Jersey, and live at 4 Parkview Drive, Hazlet, New Jersey.

8.      Defendant Patriot Land Transfer, LLC, is a limited liability company licensed to conduct business throughout New Jersey and elsewhere and maintains its principal place of business at 5001 New Jersey 42, Turnersville, New Jersey, 08012. In some places, such as Pennsylvania, Defendant Patriot Land Transfer LLC also does business as "Patriot Land Transfer of NJ, LLC."

9.      Defendant Patriot Land Processing, LLC, is a limited liability company licensed to conduct business throughout New Jersey and Pennsylvania, and maintains its principal place of business at 5001 New Jersey 42, Turnersville, New Jersey, 08012.

10.     Defendant Wells Fargo Bank, N.A., is a member of the national association of banks doing business throughout the United States and existing under California law. Wells Fargo engaged in the business of residential mortgage lending across the nation, including in New Jersey and Pennsylvania.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over the parties and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

688694.1

## FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF

13. Congress enacted RESPA in 1974 as a response to the abuses in the real estate settlement process. Congress found that kickbacks and unearned fees in the settlement process resulted in unnecessarily high settlement charges and other harms to residential mortgage borrowers.

14. 12 U.S.C. § 2607 states in relevant part:

> (a) Business Referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

> (b) Splitting charges. No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving federally related mortgage loan other than for services actually performed.

15. 12 U.S.C. § 2607(d)(2) states in relevant part:

> Any person or persons who violate the prohibitions or limitations of [12 USC § 2607] shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

16. The purpose of 12 U.S.C. § 2607 is to eliminate payment of unearned fees in connection with settlement services provided in federally related mortgage transactions, to protect consumers from unnecessarily high settlement charges caused by certain abusive practices, and to protect against other harms to consumers resulting from coordinated business relationships for settlement services. *See* 12 U.S.C. § 2601.

17. The Patriot Defendants were at all relevant times title services companies licensed under the laws of various states, including New Jersey and Pennsylvania.

688694.1

18.     At all relevant times, Wells Fargo's employees and/or agents were licensed HMCs, mortgage brokers and/or authorized loan officers and at all relevant times were acting within scope of the business relationship and duties of their employment on behalf of Wells Fargo, specifically: seeking borrowers and securing loans for residential mortgages through Wells Fargo and/or brokering such loans through Wells Fargo to other lenders authorized by Wells Fargo, the referral of Wells Fargo borrowers and/or their loans to title companies, and working with title companies to close these loans. All activities, including the interaction with the Patriot Defendants, were for the benefit of Wells Fargo.

**Wells Fargo's History of Receiving and Accepting Kickbacks Paid by Title and Settlement Services Companies**

19.     Despite continued enforcement of RESPA, the prevalence of kickbacks and unearned fee splits remains in many markets with some experts estimating that, in some markets, the great majority of all residential mortgage and refinance transactions are subject to kickbacks. *See* Kenneth R. Harney, <u>Feds target real estate kickback deals that cost you money</u>, Chicago Tribune (October 21, 2015), <u>http://www.chicagotribune.com/classified/ realestate/ct-mre-1025-harney-20151021-column.html</u>.

20.     Wells Fargo has a history of participating in kickback schemes related to its residential mortgage lending. Beginning in 2009 and continuing through early 2013, Wells Fargo's branch managers, mortgage brokers or HMCs, and other employees and/or agents were paid, accepted and received kickbacks in exchange for the referral of loans to Genuine Title LLC, a Maryland title and settlement services company, for settlement services. Wells Fargo received and accepted kickbacks in two forms: (1) direct cash payments and (2) free marketing materials, including: the culling and selecting of the highest value leads to send mail that would

5

most closely match the mortgage products and programs Wells Fargo was featuring, borrower sales leads, payment for printing, inserting and folding of mail pieces and/or postage.

21.     In 2013, the Maryland Insurance Administration ("MIA"), the regulator of title and settlement service providers in Maryland, began investigating Genuine Title related to its payment of kickbacks to multiple lenders, including Wells Fargo.

22.     The Consumer Financial Protection Bureau ("CFPB") became involved in the MIA's investigation and ultimately filed a Complaint against Wells Fargo in the United States District Court for the District of Maryland alleging that from 2009 through 2013 Wells Fargo loan officers received and accepted marketing services from Genuine Title that assisted loan officers in generating business and increasing the number of loans that Wells Fargo originated or refinanced. These kickbacks were received, accepted and paid under an agreement and with the understanding the Wells Fargo loan officers would refer the loans generated by these kickbacks to Genuine Title for settlement services ("Genuine Title Kickback Scheme"). *See Consumer Financial Protection Bureau v. Wells Fargo Bank, N.A.*, Case No. 1:15-cv-00179-RDB (filed Jan. 22, 2015).

23.     The CFPB identified more than 90 Wells Fargo home mortgage consultants at 18 branches who were participating in the Genuine Title Kickback Scheme.

24.     In 2015, Wells Fargo entered a Consent Order with the CFPB and agreed to pay a civil penalty of $21,000,000 to resolve the CFPB's allegations regarding Wells Fargo's participation in the Genuine Title Kickback Scheme from 2009 through 2013.  See Ex. 1, Wells Fargo, CFPB Consent Order.

25.     In late 2015, Wells Fargo agreed to settle class claims for the RESPA violations of its borrowers related to its participation in the Genuine Title Kickback Scheme. *See Fangman*

6

*v. Genuine Title, LLC,* Case No. 1:14-cv-00081-RDB pending in the Northern Division of the United States District Court for the District of Maryland, ECF Nos. 237 (Motion for Preliminary Approval), 251 (Preliminary Approval Order), 400 (Final Approval Order and Judgment).

**The Patriot Defendants Kickback Scheme with Wells Fargo**

26.     At or about the time the MIA and CFPB began investigating Genuine Title in 2013, Wells Fargo discontinued its relationship with and participation in the Genuine Title Kickback Scheme.

27.     In order to continue to receive the benefits it received under the Genuine Title Kickback Scheme and to continue to generate business and increase the number of loans that Wells Fargo originated or refinanced, Wells Fargo substituted the Patriot Defendants for Genuine Title, and began accepting and receiving kickbacks from the Patriot Defendants in exchange for the referral of residential mortgage loans and refinance transactions originated by Wells Fargo to the Patriot Defendants for settlement services.

28.     Beginning in early 2013, and upon information and belief, continuing until on or about April, 2015, based upon the Patriot Defendants and Wells Fargo's continuing pattern of practice, Wells Fargo, as well as licensed mortgage brokers, branch managers, HMCs and others employed by Wells Fargo, directly or indirectly received kickbacks in the form of sales and marketing leads and, upon information and belief, other things of value from the Patriot Defendants in exchange for referrals of Wells Fargo borrowers to the Patriot Defendants for settlement services ("Referral Agreement") in violation of RESPA.

29.     Wells Fargo corporate management was aware of and required its branch managers and HMCs to participate in the Referral Agreement and to receive and accept the kickbacks from the Patriot Defendants. Wells Fargo corporate management introduced Wells

Fargo branch managers and HMCs to the Patriot Defendants to facilitate the Referral Agreement and receipt and acceptance of kickbacks. These sales and marketing leads and other things of value were received for the benefit of Wells Fargo

30.     Wells Fargo corporate management told its branch managers, HMCs and other employees and/or agents that it ended its relationship with Genuine Title because it was dissatisfied with the service it was receiving from Genuine Title and did not disclose, and concealed from its employees, borrowers and others, its participation in the Genuine Title Kickback Scheme and the MIA and CFPB investigations and related proceedings.

31.     During the relevant time period, Thomas Crowe was employed as a Wells Fargo HMC.  Thomas Crowe was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo. Thomas Crowe in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

32.     During the relevant time period, Jeffrey Bellak was employed as a Wells Fargo HMC.  Jeffrey Bellak was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo. Jeffrey Bellak in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

33.     During the relevant time period, Marc Cramer was employed as a Wells Fargo HMC.  Marc Cramer was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo. Marc

Cramer in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

34.     During the relevant time period, Theresa Cibotti was employed as a Wells Fargo HMC.  Theresa Cibotti was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of her continued employment with Wells Fargo. Theresa Cibotti in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

35.      During the relevant time period, John Dally was employed as a Wells Fargo HMC.  John Dally was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo.  John Dally in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

36.     During the relevant time period, John Fuhrmesiter was employed as a Wells Fargo HMC.   John Fuhrmesiter was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo.  John Fuhrmesiter in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

37.     During the relevant time period, Philip Caruso was employed as a Wells Fargo HMC.  Philip Caruso was required by Wells Fargo corporate management to participate in the

688694.1

Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo. Philip Caruso in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

38.    During the relevant time period, Jeffrey Nussbaum was employed as a Wells Fargo HMC. Jeffrey Nussbaum was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo.  Jeffrey Nussbaum in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

39.    During the relevant time period, Charles McKenna was employed as a Wells Fargo HMC and branch manager. Charles McKenna was required by Wells Fargo corporate management to participate in the Patriot Kickback Scheme as a condition of his continued employment with Wells Fargo. Charles McKenna in fact referred loans to the Patriot Defendants under the Referral Agreement and received and accepted from the Patriot Defendants kickbacks in the form of sales and marketing leads for these referrals.

40.    Plaintiffs believe, and therefore aver, and based upon Wells Fargo's continuing pattern of practice, in addition to Crowe, Bellak, Cramer, Cibotti, Dally, Fuhrmesiter, Caruso, Nussbaum, and McKenna, other currently known or unknown branch managers, HMCs, and other employees and/or agents of Wells Fargo participated in the Patriot Kickback Scheme.

41.    Plaintiffs additionally believe, and therefore aver, based upon a continuing pattern of practice, the Patriot Defendants provided, and currently known and unknown branch

managers, HMCs, and other employees and/or agents of Wells Fargo received, things of value in exchange for the referral of borrowers to the Patriot Defendants.

42.     Plaintiffs believe, and therefore aver, that no title or settlement services were provided by Wells Fargo and/or its employees and/or agents associated with the receipt of the kickbacks.

43.     The payment by the Patriot Defendants and acceptance by Wells Fargo of the kickbacks were solely for the referral of borrowers to the Patriot Defendants.

44.     Plaintiffs were charged for settlement services related to their federally-related mortgage by the Patriot Defendants while Wells Fargo and its employees and/or agents were engaging in the Patriot Kickback Scheme.

45.     As a result of the Patriot Kickback Scheme, Plaintiffs and Class Members were deprived of kickback-free settlement services and impartial and fair competition, in violation of 12 U.S.C. § 2607.

46.     Plaintiffs and Class Members paid more for their settlement services because Wells Fargo and its employees and/or agents performed no services in exchange for the kickbacks paid and kickbacks were paid instead of lowering the cost of title and settlement services to the consumers.

47.     As a result of these Defendants' participation in the Patriot Kickback Scheme, Plaintiffs and Class Members were deprived of kickback-free settlement services and impartial and fair competition, as required by 12 U.S.C. § 2607, and Plaintiffs and Class Members paid more for their settlement services.

## FACTS FOR INDIVIDUAL CLASS REPRESENTATIVES

48.     On or about June, 2014, Plaintiff Anna Conover and her husband Marshall

Conover, deceased, obtained a federally-related residential mortgage, brokered through Wells Fargo by HMC Kathryn Griffin, in relation to the refinancing of their residential real property at 238 Main Avenue, Milmay, New Jersey.

49.     Wells Fargo, by and through their employee Griffin, referred Marshall and Anna Conover and their loan to the Patriot Defendants for title and settlement services. On the basis of this referral, Marshall and Anna Conover used Patriot Land Transfer LLC for title and settlement services and settled on or about June 16, 2014. Marshall and Anna Conover paid the Patriot Defendants for title and settlement services. *See* Exhibit 1, Conover HUD-1.

50.      Wells Fargo, by and through its employee Griffin, referred Marshall and Anna Conover to the Patriot Defendants for title and settlement services pursuant to the Referral Agreement with the Patriot Defendants as a quid pro quo for receiving sales and marketing leads, and, upon information and belief, other things of value, from the Patriot Defendants.

51.     Wells Fargo and the Patriot Defendants omitted the kickbacks from the Conover Plaintiffs' HUD-1 settlement statement and other required loan documents in an effort to conceal the kickbacks from Plaintiffs, and did so conceal the kickbacks from Plaintiffs.

52.     Wells Fargo and the Patriot Defendants hid and chose not to disclose to Plaintiffs their coordinated business relationship in an effort to conceal the kickbacks and the Patriot Kickback Scheme from Plaintiffs, and did so conceal the coordinated business relationship, kickbacks and the Patriot Kickback Scheme from Plaintiffs.

53.     Marshall and Anna Conover paid the Patriot Defendants for those title and settlement services. A portion of that payment was illegally split and shared with Wells Fargo through the Patriot Defendants' payment for marketing leads, and, upon information and belief,

688694.1

other things of value to Wells Fargo and its branch managers, HMCs and other employees and/or agents.

54.     As a direct and proximate result of the actions of Wells Fargo and the Patriot Defendants, Plaintiff Anna Conover and other Class Members were deprived of impartial and fair competition between settlement service providers in violation of RESPA, paid more for said settlement services, and suffered other harms.

55.     On or about June, 2014, Plaintiffs Parrish and Jacqueline Sheridan obtained a federally-related residential mortgage, brokered through Wells Fargo by HMC Jeffrey Nussbaum, in relation to the refinancing of their residential real property at 213 Fairway Lane, Neptune, New Jersey. *See* Exhibit 2, Sheridan Transactional Loan Closing Instructions Sheet.

56.     Wells Fargo, by and through their employee Nussbaum, referred the Sheridans and their loan to the Patriot Defendants for title and settlement services. On the basis of this referral, the Sheridans used Patriot Land Transfer LLC for title and settlement services and settled on or about June 25, 2014. The Sheridans paid the Patriot Defendants for title and settlement services.  *See* Exhibit 3, Sheridan HUD-1.

57.      Wells Fargo, by and through its employee Nussbaum, referred the Sheridans to the Patriot Defendants for title and settlement services pursuant to the Referral Agreement with the Patriot Defendants as a quid pro quo for receiving sales and marketing leads, and, upon information and belief, other things of value, from the Patriot Defendants.

58.     Wells Fargo and the Patriot Defendants omitted the kickbacks from the Sheridans' HUD-1 settlement statement and other required loan documents in an effort to conceal the kickbacks from Plaintiffs, and did so conceal the kickbacks from Plaintiffs.

688694.1

59.     Wells Fargo and the Patriot Defendants hid and chose not to disclose to the Sheridans their coordinated business relationship in an effort to conceal the kickbacks and the Patriot Kickback Scheme from Plaintiffs, and did so conceal the coordinated business relationship, kickbacks and the Patriot Kickback Scheme from Plaintiffs.

60.     The Sheridans paid the Patriot Defendants for those title and settlement services. A portion of that payment was illegally split and shared with Wells Fargo through the Patriot Defendants' payment for marketing leads, and, upon information and belief, other things of value to Wells Fargo and its branch managers, HMCs and other employees and/or agents.

61.     As a direct and proximate result of the actions of Wells Fargo and the Patriot Defendants, the Sheridans and other Class Members were deprived of impartial and fair competition between settlement service providers in violation of RESPA, paid more for said settlement services, and suffered other harms.

62.     On or about November, 2014, Plaintiffs Bryan and Jacqueline Van Velson obtained a federally-related residential mortgage, brokered through Wells Fargo by HMC Jeffrey Nussbaum, in relation to the refinancing of their residential real property at 4 Park View Drive, Hazlet, New Jersey.

63.     Wells Fargo, by and through their employee Nussbaum, referred the Van Velsons and their loan to the Patriot Defendants for title and settlement services. On the basis of this referral, the Van Velsons used Patriot Land Transfer LLC for title and settlement services and settled on or about November 10, 2014. The Van Velsons paid the Patriot Defendants for title and settlement services.

64.     Wells Fargo, by and through its employee Nussbaum, referred the Van Velsons to the Patriot Defendants for title and settlement services pursuant to the Referral Agreement

14

with the Patriot Defendants as a quid pro quo for receiving sales and marketing leads, and, upon information and belief, other things of value, from the Patriot Defendants.

65.    Wells Fargo and the Patriot Defendants omitted the kickbacks from the Van Velsons' HUD-1 settlement statement and other required loan documents in an effort to conceal the kickbacks from Plaintiffs, and did so conceal the kickbacks from Plaintiffs.

66.    Wells Fargo and the Patriot Defendants hid and chose not to disclose to the Van Velsons their coordinated business relationship in an effort to conceal the kickbacks and the Patriot Kickback Scheme from Plaintiffs, and did so conceal the coordinated business relationship, kickbacks and the Patriot Kickback Scheme from Plaintiffs.

67.    The Van Velsons paid the Patriot Defendants for those title and settlement services.  A portion of that payment was illegally split and shared with Wells Fargo through the Patriot Defendants' payment for marketing leads, and, upon information and belief, other things of value to Wells Fargo and its branch managers, HMCs and other employees and/or agents.

68.    As a direct and proximate result of the actions of Wells Fargo and the Patriot Defendants, the Van Velsons and other Class Members were deprived of impartial and fair competition between settlement service providers in violation of RESPA, paid more for said settlement services, and suffered other harms.

## CLASS ACTION ALLEGATIONS

69.    The allegations in the above stated paragraphs are incorporated by reference as if fully restated herein.

70.    Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23, and the alleged Patriot Class is defined as follows:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate

Settlement Procedures Act, 12 U.S.C. § 2602) for which Patriot Land Transfer, LLC (also d/b/a Patriot Land Transfer of NJ LLC) and/or Patriot Land Processing LLC provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2013, and April 13, 2015.  Exempted from this class is any person who, during the period of January 1, 2013 through April 13, 2015, was an employee, officer, member and/or agent of Patriot Land Transfer LLC and/or Patriot Land Processing LLC, and any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

71.     Upon information and belief, the Patriot Class is comprised of subclasses defined by the lender or other company that brokered or originated the subject class loan. These subclasses specifically include:

Subclass 1:  All Patriot Class Members who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) brokered or originated by Wells Fargo Bank N.A., for which Patriot Land Transfer, LLC (also d/b/a Patriot Land Transfer of NJ LLC) and/or Patriot Land Processing LLC provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2013, and April 13, 2015. Exempted from this subclass is any person who, during the period of January 1, 2013 through April 13, 2015, was an employee, officer, member and/or agent of Wells Fargo Bank N.A.

Additional subclasses may be similarly defined on identification of other non-Wells Fargo Participating Lenders.

72.     There are questions of law and fact common to the claims of each and all members of the Class.  These common questions include, but are not limited to:

a.      Whether Wells Fargo and its employees and/or agents received unearned fees and illegal kickbacks from the Patriot Defendants for the referral of business to the Patriot Defendants;

b.      Whether Wells Fargo and its employees and/or agents' receipt and acceptance of sales and marketing leads, and, upon information and belief, other things of value violated RESPA;

c.      Whether Plaintiffs and Class Members were forced to pay more for said settlement services;

16

d.      Whether Wells Fargo and the Patriot Defendants actively concealed the Patriot Kickback Scheme to avoid detection by Plaintiffs and Class Members;

e.      Whether Plaintiffs and the Class are entitled to treble damages under RESPA;

f.      Whether Plaintiffs and the Class are entitled to attorneys' fees and expenses under RESPA;

g.      Whether Wells Fargo failed to disclose and concealed from Plaintiffs and Class Members that Wells Fargo, and its branch managers, HMCs and other employees and/or agents, were participating with the Patriot Defendants in the Patriot Kickback Scheme and failed to disclose and concealed, among other things, their coordinated business arrangements and/or relationships; and

h.      Whether despite exercising reasonable due diligence, Plaintiffs and Class Members did not and could not have learned of the illegal kickbacks and the Patriot Kickback Scheme until contacted by counsel.

73.     These common issues of law and fact, and the common statutory measure of damages, predominate over any question affecting only individual Class Members.

74.     Because of Defendants' omission of kickbacks from any line or section of Plaintiffs' HUD-1s, Plaintiffs did not know and could not know of the kickbacks or the Patriot Kickback Scheme at the time of settlement or thereafter. Plaintiffs acted reasonably and diligently.

75.     Wells Fargo concealed and failed to report its participation in the Patriot Kickback Scheme to the CFPB during its investigation at the time of or after entering the Consent Order, furthering Plaintiffs' and Class Members' inability to know about the Patriot Kickback Scheme at the time of the CFPB Consent Order or thereafter. Plaintiffs acted reasonably and diligently.

76.     Plaintiffs did not and could not have known about the Kickback Scheme until contacted by undersigned counsel on or about April 26, 2017, due to the Patriot Defendants' and

Wells Fargo's efforts to conceal the kickbacks and the Patriot Kickback Scheme from Plaintiffs, Class Members, and regulators. Plaintiffs acted reasonably and diligently.

77.     Plaintiffs' transactions and the course of events thereafter exemplify the working of the Patriot Kickback Scheme, and are typical of the transactions involving all members of the proposed class.

78.     Plaintiffs' claims are typical of the claims or defenses of the respective Class Members, and are subject to the same statutory measure of damages set forth in 12 U.S.C. § 2607(d)(2).

79.     Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the named Plaintiffs and all other members of the Class are identical.

80.     Plaintiffs' counsel has substantial experience in complex litigation and class action proceedings and will adequately represent the Class' interests.

81.     The Class consists, upon information and belief, of over one hundred borrowers, and thus are so numerous that joinder of all members is impracticable.

82.     Separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Wells Fargo.

83.     This action entails questions of law and fact common to Class Members that predominate over any questions affecting only individual Plaintiffs, and, therefore, a class action is superior to other available methods of fair and efficient adjudication of this litigation.

84.      Other than those who have been contacted by Plaintiffs' counsel, Class Members are unaware of their rights to prosecute a claim against Defendants.

85.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but if he or she does, he or she may exclude himself or herself from the class upon the receipt of notice under Fed. R. Civ. P. 23(c).

## COUNT I
## Violation of the Real Estate Settlement Procedures Act (RESPA),
## 12 U.S.C. § 2607(a) and (b)

86.     Plaintiffs incorporate the above stated paragraphs as if restated herein.

87.     All transactions at issue in the instant complaint are incident to or part of real estate settlement services involving federally related mortgage loans and thereby are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

88.     At all relevant times, the Patriot Defendants were subject to the provisions of RESPA, 12 U.S.C. § 2601, *et. seq.*

89.     As a lender and/or broker and/or servicer of federally related mortgage loans, Wells Fargo, and its branch managers, HMCs and other employees and agents involved in the origination and closing of residential mortgage loans, are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

90.     The Patriot Defendants provided Wells Fargo, and its branch managers and HMCs, kickbacks and/or things of value in exchange for referrals of business to the Patriot Defendants, in violation of RESPA, 12. U.S.C. § 2607(a) and (b).

91.     Wells Fargo directly and by and through its branch managers, HMCs, and other employees and/or agents, received and accepted things of value for referrals of business as part of real estate settlement services provided to Plaintiffs and Class Members, in violation of RESPA, 12 U.S.C. § 2607(a) and (b).

92.     All loans referred to the Patriot Defendants as part of the Patriot Kickback Scheme were secured by first or subordinate liens on residential real property and were made in whole or in part by Wells Fargo and/or its affiliates, whose deposits or accounts are insured by the Federal Government and/or who are regulated by an agency of the Federal Government.

93.     The payment and/or arranging of payment of kickbacks to Wells Fargo, its branch managers, HMCs and other employees and/or agents, by the Patriot Defendants and the corresponding receipt thereof constitute a violation of § 8(a) of RESPA, which prohibits the payment of referral fees or kickbacks pursuant to an agreement in connection with the origination or brokering of federally related mortgage loans.

94.     The kickbacks paid by the Patriot Defendants to Wells Fargo and its branch managers, HMCs, and other employees and/or agents, were also made solely for the purpose of the Patriot Defendants receiving referrals for settlement services.  No services were actually performed by Wells Fargo or its branch managers, HMCs and other employees and/or agents in connection with the receipt of these payments and/or things of value, in violation of 12 U.S.C. § 2607(b), which prohibits the splitting of fees in connection with the origination of federal related mortgage loans.

95.     The Patriot Defendants and Wells Fargo fraudulently and actively concealed the kickbacks and the Patriot Kickback Scheme from Plaintiffs and Class Members by refusing to list the kickbacks on Plaintiffs and Class Members' HUD-1 settlement statements and other required loan documents, failing and refusing to disclose their coordinated business arrangement, and by engaging in an elaborate payment scheme to conceal the illegal kickbacks. In addition, Wells Fargo fraudulently and actively concealed the kickbacks and the Patriot Kickback Scheme

by failing to report and/or disclose the kickbacks and the Patriot Kickback Scheme during the CFPB investigation and/or pursuant to the Consent Order.

96.     Wells Fargo chose, in part, to conceal the Patriot Kickback Scheme from the CFPB because the CFPB required Wells Fargo to pay restitution to the Genuine Title Kickback Scheme victims in addition to being exposed to liability to those victims on a direct or class action for compensation under RESPA.

97.     Despite acting reasonably and exercising due diligence, Plaintiffs and Class Members did not and could not have known about the Patriot Kickback Scheme until contacted by undersigned counsel.

98.     As a direct and proximate result of the Patriot Defendants' and Wells Fargo's actions, Plaintiffs and Class Members used the Patriot Defendants for title and settlement services, paid for said services and were deprived of impartial and fair competition and, but for the Patriot Kickback Scheme, the costs paid by Plaintiffs and Class Members to the Patriot Defendants for settlement services would have been lower.

WHEREFORE Plaintiffs respectfully demand:

a.      That this Court certify this class action pursuant to Federal Rule of Civil Procedure 23 and set this matter for trial; and

b.      That this Court enter judgment for Plaintiffs and Class Members against the Patriot Defendants and Wells Fargo, jointly and severally, and award Plaintiffs and Class Members an amount equal to:

1.      Damages for settlement services charged by the Patriot Defendants, including, but not limited to, title insurance premiums, in an amount equal to three times the amount of any charge paid for such settlement services, pursuant to 12 U.S.C. § 2607(d)(2);

21

2.      Reasonable attorneys' fees, interest and costs pursuant to 12 U.S.C. § 2607(d)(5); and

3.      Such other and further relief as this Court deems proper.

**LITE DEPALMA GREENBERG LLC**

Dated: June 23, 2017                 _/s/ Bruce D. Greenberg_____
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 877-3820
Facsimile:  (973) 623-0858
bgreenberg@litedepalma.com

**JOSEPH, GREENWALD & LAAKE**
Timothy F. Maloney, Esq.
Veronica B. Nannis, Esq.
Megan A. Benevento, Esq.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
Telephone: (301) 220-2200
Facsimile:  (301) 220-1214
tmaloney@jgllaw.com
vnannis@jgllaw.com
mbenevento@jgllaw.com
*(Pro Hac Vice admission to sought)*

**SMITH, GILDEA & SCHMIDT, LLC**
Michael Paul Smith, Esq.
Melissa L. English, Esq.
Sarah A. Zadrozny, Esq.
600 Washington Avenue, Suite 200
Towson, MD 21202
Telephone: (410) 821-0070
Facsimile:  (410) 821-0071
Email: mpsmith@sgs-law.com
menglish@sgs-law.com
szadrozny@sgs-law.com
*(Pro Hac Vice admission to sought)*

*Attorneys for Plaintiffs and Class*

22

## <u>PRAYER FOR JURY TRIAL</u>

Plaintiffs and Class Members hereby request a trial by jury on the foregoing Class Action

Complaint.

**LITE DEPALMA GREENBERG LLC**

Dated: June 23, 2017                   _/s/ Bruce D. Greenberg_
                                       Bruce D. Greenberg
                                       570 Broad Street, Suite 1201
                                       Newark, NJ 07102
                                       Telephone: (973) 877-3820
                                       Facsimile:  (973) 623-0858
                                       bgreenberg@litedepalma.com

                                       **JOSEPH, GREENWALD & LAAKE**
                                       Timothy F. Maloney, Esq.
                                       Veronica B. Nannis, Esq.
                                       Megan A. Benevento, Esq.
                                       6404 Ivy Lane, Suite 400
                                       Greenbelt, Maryland 20770
                                       Telephone: (301) 220-2200
                                       Facsimile:  (301) 220-1214
                                       tmaloney@jgllaw.com
                                       vnannis@jgllaw.com
                                       mbenevento@jgllaw.com
                                       _(Pro Hac Vice admission to sought)_

                                       **SMITH, GILDEA & SCHMIDT, LLC**
                                       Michael Paul Smith, Esq.
                                       Melissa L. English, Esq.
                                       Sarah A. Zadrozny, Esq.
                                       600 Washington Avenue, Suite 200
                                       Towson, MD 21202
                                       Telephone: (410) 821-0070
                                       Facsimile:  (410) 821-0071
                                       Email: mpsmith@sgs-law.com
                                       menglish@sgs-law.com
                                       szadrozny@sgs-law.com
                                       _(Pro Hac Vice admission to sought)_

                                       _Attorneys for Plaintiffs and Class_

688694.1

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**LITE DEPALMA GREENBERG LLC**

Dated: June 23, 2017

  */s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 877-3820
Facsimile:  (973) 623-0858
bgreenberg@litedepalma.com

**JOSEPH, GREENWALD & LAAKE**
Timothy F. Maloney, Esq.
Veronica B. Nannis, Esq.
Megan A. Benevento, Esq.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
Telephone: (301) 220-2200
Facsimile:  (301) 220-1214
tmaloney@jgllaw.com
vnannis@jgllaw.com
mbenevento@jgllaw.com
*(Pro Hac Vice admission to sought)*

**SMITH, GILDEA & SCHMIDT, LLC**
Michael Paul Smith, Esq.
Melissa L. English, Esq.
Sarah A. Zadrozny, Esq.
600 Washington Avenue, Suite 200
Towson, MD 21202
Telephone: (410) 821-0070
Facsimile:  (410) 821-0071
Email: mpsmith@sgs-law.com
menglish@sgs-law.com
szadrozny@sgs-law.com
*(Pro Hac Vice admission to sought)*

*Attorneys for Plaintiffs and Class*

688694.1

# EXHIBIT 1

Ifl?

**L. Settlement Charges**

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| **700. Total Real Estate Broker Fees** | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Our origination charge | | 899.00 (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | (from GFE #2) | | |
| 803. Your adjusted origination charges | | (from GFE A) | 899.00 | |
| 804. Appraisal fee to | Rels Valuation POC (Borrower) $435.00 | (from GFE #3) | | |
| 805. Credit report to | Corelogic Credco, LLC POC (Borrower) $23.54 | (from GFE #3) | | |
| 806. Tax service to | | (from GFE #3) | | |
| 807. Flood certification | | (from GFE #3) | | |
| 808. | | (from GFE #3) | | |
| 809. | | (from GFE #3) | | |
| 810. | | (from GFE #3) | | |
| 811. | | (from GFE #3) | | |
| 812. | | (from GFE #3) | | |
| 813. | | (from GFE #3) | | |
| 814. | | (from GFE #3) | | |
| 815. | | (from GFE #3) | | |
| 816. | | (from GFE #3) | | |
| **900. Items Required by Lender to Be Paid in Advance** | | | | |
| 901. Daily interest charges from  6/20/2014  to  6/30/2014  @ $ 14.7400  /day | | (from GFE #10) | 162.14 | |
| 902. Mortgage insurance premium  for  months to | | (from GFE #3) | | |
| 903. Homeowner's insurance  for  years to | | (from GFE #11) | | |
| 904. | | | | |
| 905. | | | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Initial deposit for your escrow account | Wells Fargo Bank, N.A. | (from GFE #9) | 1,366.56 | |
| 1002. Homeowner's insurance  8  months @ $  70.92  per month | | 567.36 | | |
| 1003. Mortgage insurance  months @ $  per month | | | | |
| 1004. Property taxes  2  months @ $  399.63  per month | | 799.26 | | |
| 1005.  months @ $  per month | | | | |
| 1006.  months @ $  per month | | | | |
| 1007. Aggregate Adjustment | | -0.06 | | |
| **1100. Title Charges** | | | | |
| 1101. Title services and lender's title insurance | Patriot Land Transfer, LLC | (from GFE #4) | 1,322.00 | |
| 1102. Settlement or closing fee | Patriot Land Transfer, LLC | 325.00 | | |
| 1103. Owner's title insurance | | (from GFE #5) | | |
| 1104. Lender's title insurance | Patriot Land Transfer, LLC | 411.00 | | |
| 1105. Lender's title policy limit $123,000.00 | | | | |
| 1106. Owner's title policy limit (N/A) | | | | |
| 1107. Agent's portion of the total title insurance premium  Patriot Land Transfer, LLC | | $360.60 | | |
| 1108. Underwriter's portion of the total title insurance premium  Old Republic National Title Insurance Company | | $125.40 | | |
| 1109. CPL | Old Republic | 75.00 | | |
| 1110. Release of Mortgages (2) | | 150.00 | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1114. | | | | |
| 1115. | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Government recording charges | Clerk of ATLANTIC County | (from GFE #7) | 300.00 | |
| 1202. Deed $  Mortgage $300.00  Releases $ | | | | |
| 1203. Transfer taxes | Clerk of ATLANTIC County | (from GFE #8) | | |
| 1204. City/County tax/stamps  Deed $  Mortgage $ | | | | |
| 1205. State tax/stamps  Deed $  Mortgage $ | | | | |
| 1206. | | | | |
| 1207. | | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Required services that you can shop for | | (from GFE #6) | 99.00 | |
| 1302. 2014 3rd Quarter Taxes - Est | Buena Vista Tax Collector | | 1,438.66 | |
| 1303. Flood Life of Loan Fee | WF Flood Services | 19.00 | | |
| 1304. Tax Service Fee | WF RE Est Tax Services | 80.00 | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1309. | | | | |
| 1310. | | | | |
| | | | 5,587.36 | |

POC-Paid Outside of Closing  (B)-Buyer  (S)- Seller

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| **Charges That Cannot Increase** | **HUD-1 Line Number** | | |
| Our origination charge | # 801 | 899.00 | 899.00 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | | |
| Your adjusted origination charges | # 803 | 899.00 | 899.00 |
| Transfer taxes | # 1203 | | |
| **Charges That in Total Cannot Increase More Than 10%** | | **Good Faith Estimate** | **HUD-1** |
| Government recording charges | # 1201 | 480.00 | 300.00 |
| Appraisal fee to | # 804 | 435.00 | 435.00 |
| Credit report to | # 805 | 23.54 | 23.54 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Mortgage Insurance Premium | # 902 | | |
| | | | |
| | | | |
| | | | |
| Flood Life of Loan Fee | # 1303 | 19.00 | 19.00 |
| Tax Service Fee | # 1304 | 80.00 | 80.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | $1,037.54 | $857.54 |
| | | $-180.00 or | -17.3500% |
| **Charges That Can Change** | | **Good Faith Estimate** | **HUD-1** |
| Initial deposit for your escrow account | # 1001 | 1,116.69 | 1,366.56 |
| Daily interest charges | # 901 $14.74/day | 117.92 | 162.14 |
| Homeowner's insurance | # 903 | 800.00 | |
| | | | |
| Title services and lender's title insurance | # 1101 | 1,207.75 | 1,322.00 |

**Loan Terms**

| | |
|---|---|
| Your initial loan amount is | $123,000.00 |
| Your loan term is | 30 years |
| Your initial interest rate is | 4.3750% |
| Your initial monthly amount owed for principal, interest, and and any mortgage insurance is | $614.12 includes<br>[X] Principal<br>[X] Interest<br>[ ] Mortgage Insurance |
| Can your interest rate rise? | [X] No. [ ] Yes, it can rise to a maximum of %. The first change will be on and can change again every after . Every change date, your interest rate can increase or decrease by %. Over the life of the loan, your interest rate is guaranteed to never be lower that % or higher than %. |
| Even if you make payments on time, can your loan balance rise? | [X] No. [ ] Yes, it can rise to a maximum of $. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | [X] No. [ ] Yes, the first increase can be on and the monthly amount owed can rise to $.<br>The maximum it can ever rise to is $. |
| Does your loan have a prepayment penalty? | [X] No. [ ] Yes, your maximum prepayment penalty is $. |
| Does your loan have a balloon payment? | [X] No. [ ] Yes, you have a balloon payment of $ due in years on . |
| Total monthly amount owed including escrow account payments | [ ] You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>[X] You have an additional monthly escrow payment of $470.55 that results in a total initial monthly amount owed of $1,084.67. This includes principal, interest, any mortgage insurance and any items checked below:<br>[X] Property taxes    [X] Homeowner's insurance<br>[ ] Flood insurance    [ ] |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

POC-Paid Outside of Closing  (B)-Buyer  (S)- Seller

# EXHIBIT 2

# Transactional Loan Closing Instructions

| Settlement Agent Information | Borrower Name(s) |
|---|---|
| **To**<br>PATRIOT LAND TRANSFER<br>5001 RTE 42<br>TURNERSVILLE, NJ  08012 | PARRISH SHERIDAN<br>JACQUELYN SHERIDAN |
| **Loan Reference Numbers** | (732) 643-0055 |
| Escrow/Order #:<br>Loan #: ▮▮▮▮▮9185 | |

## Lender Contact Information

Lender: **WELLS FARGO BANK, N.A.**

CLOSING CONTACT: **DANIEL CUNNINGHAM**

PHONE: **(888) 919-4225**

FAX: **(877) 653-9251**

EMAIL: **DANIEL.D.CUNNINGHAM@WELLSFARGO.COM**

| Home Mortgage Consultant | Closing Terms |
|---|---|
| **JEFFREY NUSSBAUM**<br><br>ORIG LO NMLSR ID: **404301** | Closing Date: **06/25/14**<br>Disbursement Date: **06/30/14**<br>Commitment Expiration Date: **07/11/14**<br>Rate Expiration Date: **07/21/14** |

## Property Information

| Property Address<br><br>213 FAIRWAY LANE<br>NEPTUNE, NJ  07753 | County:<br><br>MONMOUTH |
|---|---|
| Type: [X] Single Family  [ ] 2-4 Unit  [ ] Cooperative<br>[ ] Condominium  [ ] PUD  [ ] Manufactured Housing | Flood Insurance (Y/N):  N |
| Listing Agent | Selling Agent |

## Loan Terms

The following loan terms have been approved by the Lender.  NO changes are allowed.  If final terms differ from the terms stated below, call the Lender Contact immediately.

| Loan Amount<br>$   310,966.00 | Loan Term<br>180  months | Sales Price<br>$ |
|---|---|---|
| First Payment Date<br>08/01/14 | Maturity Date<br>07/01/29 | Earnest Money<br>$ |
| Loan Type<br>[X] Conventional<br>[ ] FHA<br>[ ] VA | Loan Purpose<br>[ ] Purchase<br>[X] Refinance | Secondary Financing<br>$<br>limit  $ |
| Loan Product<br>CONFORMING FIXED | Interest Rate<br>3.625 % | Monthly  P&I or Int Only Payment<br>$    2,242.18 |
| Max 1st Int Rate Change<br>% | Max Periodic Int Rate Change<br>% | Max Lifetime Int Rate Change<br>% |



# EXHIBIT 3



OMB Approval No. 2502-0265

A. **Settlement Statement (HUD-1)**

| B. Type of Loan | | |
|---|---|---|
| 1. ☐ FHA   2. ☐ RHS   3. ☒ Conv. Unins.   4. ☐ VA   5. ☐ Conv. Ins. | 6. File Number:<br>PLT-18014 | 7. Loan Number:<br>▮▮▮9185 | 8. Mortgage Insurance Case Number: |

C. **Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>Parrish Sheridan and Jacquelyn Sheridan, 213 Fairway Ln, Neptune, NJ - 07753-2946 | E. Name & Address of Seller: | F. Name & Address of Lender:<br>Wells Fargo Bank, NA, 800 Walnut Street, 7th Floor, Des Moines, IA 50309 |
|---|---|---|
| G. Property Location:<br>213 Fairway Ln, Neptune, NJ 07753-2946<br>Township of Neptune, County of Monmouth<br>Block: 10000.02 Lot: 2 | H. Settlement Agent:<br>, Patriot Land Transfer, LLC<br>5001 Route 42, Suite A<br>Turnersville, NJ  08012<br>(856) 227-4990<br>Place of Settlement:<br>Parrish Sheridan<br>213 Fairway Ln, Neptune, NJ - 077532946 | I. Settlement Date:<br>June 25, 2014<br><br>Disbursement Date:<br>June 30, 2014 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,958.81 | 403. | |
| 104. Wells Fargo Bank, N.A. (Payoff Loan #0083957472) | 306,006.98 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. Gross Amount Due from Borrower** | 310,965.79 | **420. Gross Amount Due to Seller** | |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 310,966.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | 310,966.00 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 310,965.79 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 310,966.00 | 602. Less reductions in amount due seller (line 520) | |
| **303. Cash       TO BORROWER** | 0.21 | **603. Cash** | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Borrower:   **Parrish Sheridan**

Borrower:   **Jacquelyn Sheridan**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

**June 25, 2014**

Settlement Agent:   **Patriot Land Transfer, LLC**          Date:

POC-Paid Outside of Closing  (B)-Buyer  (S)- Seller

**L. Settlement Charges**

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| **700. Total Real Estate Broker Fees** | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Our origination charge | | 899.00 (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | -480.00 (from GFE #2) | | |
| 803. Your adjusted origination charges | | (from GFE A) | 419.00 | |
| 804. Appraisal fee to | | (from GFE #3) | | |
| 805. Credit report to | CoreLogic Credco, LLC | (from GFE #3) | 23.54 | |
| 806. Tax service to | | (from GFE #3) | | |
| 807. Flood certification | | (from GFE #3) | | |
| 808. | | (from GFE #3) | | |
| 809. | | (from GFE #3) | | |
| 810. | | (from GFE #3) | | |
| 811. | | (from GFE #3) | | |
| 812. | | (from GFE #3) | | |
| 813. | | (from GFE #3) | | |
| 814. | | (from GFE #3) | | |
| 815. | | (from GFE #3) | | |
| 816. | | (from GFE #3) | | |
| **900. Items Required by Lender to Be Paid in Advance** | | | | |
| 901. Daily interest charges from 6/30/2014 to 7/1/2014 @ $ 30.8800 /day | | (from GFE #10) | 30.88 | |
| 902. Mortgage insurance premium for months to | | (from GFE #3) | | |
| 903. Homeowner's insurance for years to | | (from GFE #11) | | |
| 904. | | | | |
| 905. | | | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Initial deposit for your escrow account | Wells Fargo Bank, NA | (from GFE #9) | 2,490.14 | |
| 1002. Homeowner's insurance 12 months @ $ 92.17 per month | | 1,106.04 | | |
| 1003. Mortgage insurance months @ $ per month | | | | |
| 1004. Property taxes 3 months @ $ 728.66 per month | | 2,185.98 | | |
| 1005. months @ $ per month | | | | |
| 1006. months @ $ per month | | | | |
| 1007. Aggregate Adjustment | | -801.88 | | |
| **1100. Title Charges** | | | | |
| 1101. Title services and lender's title insurance | Patriot Land Transfer, LLC | (from GFE #4) | 1,694.00 | |
| 1102. Settlement or closing fee | Patriot Land Transfer, LLC | 375.00 | | |
| 1103. Owner's title insurance | | (from GFE #5) | | |
| 1104. Lender's title insurance | Patriot Land Transfer, LLC | 878.00 | | |
| 1105. Lender's title policy limit $310,966.00 | | | | |
| 1106. Owner's title policy limit (N/A) | | | | |
| 1107. Agent's portion of the total title insurance premium  Patriot Land Transfer, LLC | | $757.55 | | |
| 1108. Underwriter's portion of the total title insurance premium  Old Republic National Title Insurance Company | | $195.45 | | |
| 1109. CPL | Old Republic | 75.00 | | |
| 1110. | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1114. | | | | |
| 1115. | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Government recording charges | Clerk of MONMOUTH County | (from GFE #7) | 200.00 | |
| 1202. Deed $ | Mortgage $200.00 Releases $ | | | |
| 1203. Transfer taxes | Clerk of MONMOUTH County | (from GFE #8) | | |
| 1204. City/County tax/stamps | Deed $ Mortgage $ | | | |
| 1205. State tax/stamps | Deed $ Mortgage $ | | | |
| 1206. | | | | |
| 1207. | | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Required services that you can shop for | | (from GFE #6) | 99.00 | |
| 1302. 2014 2nd Quarter Taxes | Neptune Township POC (Borrower) $2,166.91 | | 0.08 | |
| 1303. Sewer (1/1/14-6/30/14) | Neptune Township Sewer | | 2.17 | |
| 1304. | | | | |
| 1305. Flood Life of Loan | WF Flood Services | 19.00 | | |
| 1306. Tax Service Fee | WF RE Est Tax Services | 80.00 | | |
| 1307. | | | | |
| 1308. | | | | |
| 1309. | | | | |
| 1310. | | | | |
| | | | 4,958.81 | |

POC-Paid Outside of Closing  (B)-Buyer  (S)- Seller

**Comparison of Good Faith Estimate (GFE) and HUD-1 Charges**

| Charges That Cannot Increase | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Our origination charge | # 801 | 899.00 | 899.00 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | | -480.00 |
| Your adjusted origination charges | # 803 | 899.00 | 419.00 |
| Transfer taxes | # 1203 | | |

| Charges That in Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | 480.00 | 200.00 |
| | | | |
| Credit report to | # 805 | 23.54 | 23.54 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Mortgage Insurance Premium | # 902 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Flood Life of Loan | # 1305 | 19.00 | 19.00 |
| Tax Service Fee | # 1306 | 80.00 | 80.00 |
| | | | |
| | | | |
| | | $602.54 | $322.54 |
| | | $-280.00        or | -46.4700% |

| Charges That Can Change | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | 3,365.20 | 2,490.14 |
| Daily interest charges | # 901   $30.88/day | 652.89 | 30.88 |
| Homeowner's insurance | # 903 | 1,106.00 | |
| | | | |
| Title services and lender's title insurance | # 1101 | 2,017.37 | 1,694.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Loan Terms**

| | |
|---|---|
| Your initial loan amount is | $310,966.00 |
| Your loan term is | 15 years |
| Your initial interest rate is | 3.6250% |
| Your initial monthly amount owed for principal, interest, and and any mortgage insurance is | $2,242.18 includes [X] Principal  [X] Interest  [ ] Mortgage Insurance |
| Can your interest rate rise? | [X] No. [ ] Yes, it can rise to a maximum of %. The first change will be on and can change again every  after . Every change date, your interest rate can increase or decrease by %. Over the life of the loan, your interest rate is guaranteed to never be lower that % or higher than %. |
| Even if you make payments on time, can your loan balance rise? | [X] No. [ ] Yes, it can rise to a maximum of $. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | [X] No. [ ] Yes, the first increase can be on  and the monthly amount owed can rise to $. The maximum it can ever rise to is $. |
| Does your loan have a prepayment penalty? | [X] No. [ ] Yes, your maximum prepayment penalty is $. |
| Does your loan have a balloon payment? | [X] No. [ ] Yes, you have a balloon payment of $ due in  years on . |
| Total monthly amount owed including escrow account payments | [ ] You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. [X] You have an additional monthly escrow payment of $820.83 that results in a total initial monthly amount owed of $3,063.01. This includes principal, interest, any mortgage insurance and any items checked below: [X] Property taxes          [X] Homeowner's insurance [ ] Flood insurance [ ]                               [ ] |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

POC-Paid Outside of Closing  (B)-Buyer  (S)- Seller