# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANNA CONOVER, PARRISH AND JACQUELINE SHERIDAN, BRYAN AND JACQUELINE VAN VELSON, | : | : Civil Action No.: 17-4625 (RMB)(JS) |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| PATRIOT LAND TRANSFER, LLC, WELLS FARGO BANK, N.A., | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF PLAINTFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OF ALL CLAIMS, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL FOR THE SETTLEMENT CLASS**

**LITE DEPALMA GREENBERG LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................1

II.     THE KEY TERMS OF THE SETTLEMENT ...............................2

        A.     The Proposed Class ................................................2

        B.     The Proposed Settlement Benefits .............................3

        C.     Administration of Settlement Benefits.......................4

        D.     The Proposed Settlement Administrator ....................5

        E.     The Proposed Notice Plan .......................................5

        F.     Class Members' Right to Object to and Opt-Out of the Settlement .....7

        G.     The Proposed Release ............................................7

        H.     The Proposed Service Awards and Class Counsel Fees .......8

III.    THE PROPOSED SETTLEMENT MEETS THE PRELIMINARY
        APPROVAL STANDARD ..........................................................9

        A.     The Settling Parties' Negotiations Were At Arms-Length and Not
               Collusive...............................................................10

        B.     The Settlement Is Fair And Within The Range Of Approvable
               Settlements ..........................................................12

        C.     The Settlement Has No Obvious Deficiencies...................13

        D.     The Settlement Does Not Improperly Grant Preferential Treatment to
               Class Representatives or Segments of the Class ................13

        E.     The Court Should Approve the Proposed Class Notice As It Is the
               Best Practicable Under the Circumstances .........................14

IV.     THE PROPOSED SETTLEMENT CLASS SATISFIES THE STANDARD
        FOR CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS .15

A.    The Settlement Class is "adequately defined" and "ascertainable"....16

    1.    The Settlement Class has been identified in pre-certification discovery ...................................................................................16

    2.    The Settlement Class Representatives are Settlement Class members ......................................................................................17

B.    Settlement Class members are so numerous that joinder is impracticable .......................................................................................18

C.    The Settlement Class shares common questions of law or facts ........18

D.    Settlement Class Representatives' claims are typical of the entire Settlement Class ...............................................................................20

E.    The Settlement Class Representatives and their qualified counsel will fairly and adequately protect the interests of the common class ........21

    1.    The Settlement Class Representatives' interests are aligned with the Settlement Class, and they will diligently prosecute the class claims ..................................................................................22

    2.    Plaintiffs' counsel have the experience and ability to represent the Settlement Class ................................................................22

F.    The Settlement Class meets the requirements of Rule 23(b)(3) .........23

    1.    Because the Settlement Class' claims arise from the same alleged illegal kickback scheme, the common class issues related to Settlement's liability predominate ...........................24

    2.    A class action is the superior means of adjudicating the Class' claims ................................................................................27

CONCLUSION .......................................................................................29

# TABLE OF AUTHORITIES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................16, 24

*Atis v. Freedom Mortg. Corp.*,
    No. 15-03424 (RBK/JS), 2018 U.S. Dist. LEXIS 189586
    (D.N.J. Nov. 6, 2018) .....................................................................................9

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ......................................................................18, 20

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09-1248, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) .............14

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) ..........................................................................16

*Edwards v. First Am. Corp.*,
    798 F.3d 1172, 1181 (9th Cir. 2015) ............................................................26

*Fangman v. Genuine Title*,
    No. RDB-14-0081 (D. Md. 2014) .................................................................23

*First Am. Fin. Corp. v. Edwards*,
    136 S. Ct. 1533 (2016)..................................................................................26

*Freeman v. Quicken Loan, Inc.*,
    566 U.S. 624 (2012)......................................................................................26

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
    525 Fed. Appx. 94 (3d Cir. 2013) ................................................................21

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
    980 F.2d 912 (3d Cir. 1992) .................................................................. 20-21

*In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg.
Loan Litig.*,
    622 F.3d 275 (3d Cir. 2010) .........................................................................21

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) .....................................................................20, 24

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997)....................................................................10

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...................................................................14, 18

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) .........................................................................18

*Kober, et al.  v. Presidential Bank*,
    Case Nos.:  C-10-12707, C-10-13043, C-10-12871, C-10-13041,
    C-10-13041, and C-10-12705.......................................................................23

*Li v. Aeterna Zentaris, Inc.*,
    324 F.R.D. 331 (D.N.J. 2018) ......................................................................18

*Marcus v. BMW of N. Am. LLC*,
    687 F.3d 583 (3d Cir. 2012) .........................................................................16

*Mazon v. Wells Fargo Bank, N.A.*,
    No. 10-700(RBK/KMW), 2011 U.S. Dist. LEXIS 143629 ..........................10

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008)...............................................................27

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .........................................................................20

*O'Brien v. Brian Research Labs, LLC*,
    2012 WL 3242365 (D.N.J. Aug. 9, 2012)....................................................25

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).....................................................................................15

*Polombaro, et al v. Emery Federal Credit Union*,
    No. 1:15-cv-792-SJD (Southern District of Ohio) .......................................23

iv

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ............................................................18, 19, 25

*Rudel Corp. v. Heartland Payment Sys.*,
    No. 16-2229, 2017 U.S. Dist. LEXIS 165019 (D.N.J. 2017).......................10

*Shapiro v. All. MMA, Inc.*,
    No. 17-cv-2583, 2018 U.S. Dist. LEXIS 108132, (D.N.J. June 28, 2018)...10

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ....................................................................20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ......................................................... 23-24, 27

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...............................................................................18

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) ....................................................................22

## **OTHER RULES**

FED. R. CIV. P. 23 .........................................................................................7, 15

FED. R. CIV. P. 23(a)..........................................................................................29

FED. R. CIV. P. 23(a)(1) .....................................................................................18

FED. R. CIV. P. 23(a)(4) ................................................................................21, 23

FED. R. CIV. P. 23(b)(3)..............................................................................*passim*

FED. R. CIV. P. 23(b)(3)(D)................................................................................24

FED. R. CIV. P. 23(e)........................................................................................5, 9

## I.     INTRODUCTION

This is a class action case where Plaintiffs, Anna Conover, Parrish and Jacquelyn Sheridan, Bryan and Jacqueline Van Velson (together, the "Plaintiffs") allege that Wells Fargo Bank, N.A. ("Wells") and its brokers, employees and/or agents, participated in a benefit for referral scheme with Patriot Land Transfer, LLC ("Patriot").

Specifically, Plaintiffs allege that Patriot paid, and Wells received and accepted, illegal kickbacks – borrower data and lead lists – in exchange for Wells' assignment and referral of federally related mortgage loans to Patriot for title and settlement services. Plaintiffs allege that from roughly January 2013 through April 13, 2015, Wells in fact assigned and referred loans under the kickback agreement, including each Plaintiff's loan, and Patriot paid Wells kickbacks for these loans in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et. seq.*   It is also alleged that Patriot funded the kickbacks by charging borrowers undisclosed special and/or extra fees and discretionary charges, resulting in Plaintiffs paying at least $100 more than they should have for settlement services.  Wells and Patriot dispute these claims and deny participating in the benefit for referral scheme.

Recognizing the uncertainties of litigation, in June of 2019, Plaintiffs and Defendants began discussing the possibility of resolving Plaintiffs' disputed claims

against Wells and Patriot.  After a thorough investigation regarding the litigation asserted against Wells and Patriot, including through Plaintiffs' discovery of tens of thousands of records of Wells and Patriot; through Plaintiffs' review of information relating to Wells mortgage loans closed by Patriot between January 1, 2013, and April 13, 2015; and after a full day of mediation with the Honorable Joel B. Rosen, U.S.M.J. (Ret.), the parties have a reached a proposed settlement with respect to all claims against Wells and Patriot in this action (the "Settlement") that is reflected in the proposed Settlement Agreement.[1]

Plaintiffs believe that the Settlement represents a fair and reasonable resolution to the disputed claims against Wells and Patriot.  As such, Plaintiffs respectfully request that this Court enter an order: (1) preliminarily approving the Settlement, (2) approving the proposed Notice and Notice Plan; (3) certifying the Settlement Class for settlement purposes only; (4) designating Plaintiffs' Counsel as Class Counsel; and (5) establishing dates for Objections, Requests for Exclusions, and a Final Fairness Hearing.

## II.     THE KEY TERMS OF THE SETTLEMENT

### A.     The Proposed Class

Plaintiffs propose that the following class be conditionally certified by the Court for settlement purposes only:

---

[1] The Capitalized terms herein have the meanings defined in the Settlement Agreement.

All individuals who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) brokered or originated by Wells Fargo Bank N.A. and secured by real property in New Jersey for which Patriot Land Transfer, LLC (also d/b/a Patriot Land Transfer of NJ, LLC) provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2013, and April 13, 2015. Exempted from this class is any person who, during the period of January 1, 2013 through April 13, 2015, was an employee, officer, member and/or agent of Patriot Land Transfer, LLC, Wells Fargo N.A. and/or any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

(the "Settlement Class").

## B.     The Proposed Settlement Benefits

The proposed Settlement provides for the payment of the following benefits under Section 6.1 of the Settlement Agreement to all members of the Settlement Class who did not file complete and valid Requests for Exclusion by the Exclusion Deadline:

Each of these class members shall receive an amount equal to 180% of the Section 1100 Charges (excluding Line 1108 title underwriter's fees) as reflected on the member's final HUD-1 Settlement Statement for the member's Wells loan.[2]

To the extent that there is more than one borrower on a Wells loan subject to this Settlement, the co-borrowers shall be deemed to be one "class member" and

---

[2] In very real terms, this means that each borrower will get back 180% of what they paid to Patriot Title (other than the pass through amount that went to the title insurance company). In accordance therewith, the average amount paid by each borrower (including co-borrower(s)) to Patriot Land Transfer, LLC is one thousand two hundred and sixty-four ($1,264.00). As such the average settlement amount that the class members will receive is two thousand two hundred and seventy-five dollars and twenty cents ($2,275.20).

3

Settlement Benefits shall be paid by check jointly payable to the co-borrowers on such loan.

### C.    Administration of Settlement Benefits

The above-described Settlement Benefits will be funded by Wells and Patriot into a Common Fund administered by the Settlement Administrator.  Under the proposed Settlement, Settlement Class members are not required to submit a claim to receive benefits, but will be paid the above-described benefits from the Common Fund after the Settlement reaches Finality and in accordance with the Settlement Agreement.

Should any Settlement Benefit check remain un-negotiated after one hundred (100) days from the date of the check, the Settlement Administrator shall undertake an updated address verification for the primary borrower and, if that address has changed since the mailing of Notice, the Settlement Administrator shall stop payment on the uncashed Settlement Benefits check, issue a replacement Settlement Benefits check to the payee(s), and mail the replacement check by first-class mail to the updated address for the primary borrower.  Dec. Michael Paul Smith., Exhibit A, § 6.4.

Any funds remaining in the Common Fund more than three hundred (300) days after Finality of the Settlement shall be remitted by the Settlement

Administrator to Wells with interest earned on the Common Fund.  Dec. Michael Paul Smith, Ex. A, § 5.

### D.    The Proposed Settlement Administrator

Plaintiffs propose that Wells Fargo select an appropriate Settlement Administrator, subject to court approval.  The Settlement Administrator's duties are defined in Section 9.3 of the Settlement Agreement and include, *inter alia*, sending the Notices pursuant to Section 10 of the Settlement Agreement, accepting and reporting on Requests for Exclusion received by the Exclusion Deadline, establishing and maintaining a website and call center for the Settlement, the payment of Settlement Benefits, and the preparation of required tax documents. The Settlement Administrator will be retained and paid by Wells.

### E.    The Proposed Notice Plan

The proposed Notice Plan for the Settlement is described in Section 10 of the Settlement Agreement and has been designed to provide the best practicable notice of the Settlement, in accordance with FED. R. CIV. P. 23(e), to the members of the Settlement Class through individual notices and by postings on the Settlement Website.  Notices will be sent by the Settlement Administrator to the Class Members by first-class mail to the attention of the borrower and any co-borrower(s) at the address of the property that secured the Wells Fargo mortgage loan at issue.  If there is more than one borrower on a subject loan and the co-

5

borrowers have the same last known address, the Mailed Notice will be mailed to the co-borrowers' shared last known address.  If there is more than one borrower on a subject loan and the co-borrowers have different last known addresses, separate Mailed Notices will be mailed to each co-borrower's last known address.

The Settlement Administrator shall also establish and maintain a website relating to the Settlement (the "Settlement Website") on which it will post copies of the Notices, the First Amended Complaint in this Litigation, and, following their issuance, the Approval and Judgment Orders pertaining to this Settlement, as well as contact information for the Settlement Administrator and its call center. The Settlement Website shall be established not later than thirty (30) days after the issuance of the Preliminary Approval Order and will remain active for ninety (90) days after the Settlement reaches Finality. Wells shall pay all costs associated with the Notice provided under this Section.

In the settlement context, a notice shall advise the Settlement Class members of their rights to exclude themselves from the action, but at the same time afford maximum flexibility for the courts, consonant with due process safeguards. 4 H. Newberg & A. Conte, *Newberg on Class Actions,* §8:17 (5th ed. 2013); *see also Manual for Complex Litigation* § 30.212 (4th ed. 1995).

**F.    Class Members' Right to Object to and Opt-Out of the Settlement**

Consistent with FED. R. CIV. P. 23, any member of the Settlement Class shall have the right to object to the Settlement.  Any member of the Settlement Class can object by filing a written objection with the Court at the address listed in their Notice and by mailing a copy thereof to the Parties' counsel.  Such objection shall be filed not later than the Objections Deadline established by the Court, which shall not be more than forty-five (45) days after the date the Notice is mailed to the Settlement Class, or as otherwise ordered by the Court.

In addition, any member of the Settlement Class shall have the right to opt-out of the Settlement by sending a written Request for Exclusion to the Settlement Administrator at the address listed in the Notices.  Such opt-out requests must be received by the Settlement Administrator no later than the Exclusion Deadline set by the Court, which shall not be more than forty-five (45) days after the date the Mailed Notice is mailed to the Settlement Class, or as otherwise ordered by the Court.

**G.    The Proposed Release**

Under the proposed Settlement, members of the Settlement Class who do not timely exclude themselves from the Settlement and all of their respective heirs, executors, personal representatives, successors, and assigns (together "the Releasors"), release, remise, resolve, waive, acquit, and forever discharge Wells

and Patriot, their predecessors, successors, assigns, parents, subsidiaries, affiliates, related entities, and all of their past and present agents, directors, officers, employees, shareholders, insurers, representatives, and attorneys (together "the Releasees") of and from any and all the Released Claims (as defined in Section 14.2 of the Settlement Agreement).

### H.    The Proposed Service Awards and Class Counsel Fees

Section 11 of the Settlement Agreement allows for the Class Representatives to petition the Court, no later than thirty (30) days before the Final Fairness Hearing, for Service Awards not to exceed $1,500 for each Class Representative (or, in the case of married Class Representatives, to them jointly) who is appointed a Class Representative under this Settlement.  That sum would be paid in addition to the Settlement Benefits available to the Class Representatives.  Such Service Awards as allowed by the Court will be paid from the Twenty Thousand ($20,000) Dollar contribution paid by Patriot to the Common Fund.

In addition, Section 12 of the Settlement Agreement allows for Class Counsel to petition the Court, no later than thirty (30) days before the Final Fairness Hearing, for an award of attorneys' fees in the amount of Five Hundred Thousand ($500,000) Dollars plus expenses limited to no more than Fifteen Thousand Five Hundred ($15,500) Dollars incurred in the prosecution and settlement of Plaintiffs' claims against Wells and Patriot (a "Petition for Fees and

Expenses"). The Class Counsel expenses shall be paid from the Twenty Thousand Dollar contribution by Patriot to the Common Fund. The Attorneys' Fees shall be paid by Wells Fargo in addition to, and not out of the Settlement Benefits to the Settlement Class.

## III.   THE PROPOSED SETTLEMENT MEETS THE PRELIMINARY APPROVAL STANDARD

The Court should preliminarily approve the Settlement Agreement and Settlement under FED. R. CIV. P. 23(e).  The Third Circuit has recognized that the law favors the settlement of class action lawsuits. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)(noting "…there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Review and approval of a proposed class action settlement is a two step process: (1) preliminary approval and (2) a subsequent fairness hearing. *Atis v. Freedom Mortg. Corp.*, No. 15-03424 (RBK/JS), 2018 U.S. Dist. LEXIS 189586, at *6 (D.N.J. Nov. 6, 2018). "At the first stage, the parties submit the proposed settlement to the court, which makes a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the Court directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard on, object to, and opt out of the settlement." *Id.*   "Preliminary approval is not binding, and it is granted unless a

9

proposed settlement is obviously deficient." *Mazon v. Wells Fargo Bank, N.A.*, No. 10-700(RBK/KMW), 2011 U.S. Dist. LEXIS 143629, at *4-5.

"Generally, '[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.'" *Shapiro v. All. MMA, Inc.*, No. 17-cv-2583, 2018 U.S. Dist. LEXIS 108132, (D.N.J. June 28, 2018)(quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). "A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Rudel Corp. v. Heartland Payment Sys.*, No. 16-2229, 2017 U.S. Dist. LEXIS 165019, at *4 (D.N.J. 2017) (citations omitted).  As will be demonstrated in more detail below, the proposed settlement is more than sufficient to meet the "no obvious deficiency" standard.

## A. The Settling Parties' Negotiations Were At Arms-Length and Not Collusive

As an initial consideration, the Court should determine whether the settlement was non-collusive and ask was it reached through arms-length negotiation. "A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Rudel Corp.*, 2017 U.S. Dist. LEXIS 165019 at *4  (citations omitted).

Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length.  4 Newberg on Class Actions § 13:14 (5th ed. 2013).

This Court presided over and is familiar with the substantial, and adversarial, discovery (in addition to counsel's extensive pre-suit investigation) that preceded mediation in this case.  In addition to multiple discovery conferences with the Court, the parties served multiple rounds of written discovery, exchanged hundreds of thousands of relevant records and electronically stored information, and briefed, and argued, motions to compel related to records retained by relevant third parties and complex issues of statutory privilege. Plaintiffs' Counsel analyzed hundreds of thousands of records to identify the scope of the conduct supporting Plaintiffs' claims, including obtaining affidavits and other documents from third parties.  At the time of mediation, multiple depositions had been noticed and Plaintiffs planned Rule 30(b)(6) depositions of both Defendants. This substantial course of discovery was preceded by two comprehensive motions to dismiss.

Settlement negotiations were adversarial in nature, and only after a full day of mediation with Judge Rosen did Plaintiffs and their counsel conclude that a settlement with Wells and Patriot was in their best interests and the best interests of the members of the proposed Settlement Class. The circumstances surrounding the

settlement, as well as the more than 100 docket entries in this case, reflect an informed and vigorous arms-length negotiation.

**B.    The Settlement Is Fair And Within The Range Of Approvable Settlements**

The proposed Settlement provides the class with reasonable and adequate relief.  The terms of the Settlement Agreement are fair and reasonable, particularly in light of the costs and risk to the Settlement Class in proceeding with litigation. The Settlement provides significant settlement benefits for the Settlement Class. As described above, the Settlement represents a recovery of 180% of everything that the Settlement Class paid to Patriot at settlement.  The Settlement is not a "claims-made" settlement, but is a "direct pay" settlement, meaning every Settlement Class member who does not opt-out of the Settlement will receive settlement benefits without the need to take any action to obtain them.  This "direct pay" aspect of the Settlement is an independent settlement benefit because it removes the obstacle of a claims process to class member participation in the Settlement.

Additionally, like all complex commercial cases and class actions, this case faced significant litigation.  Although Plaintiffs' Counsel felt confident in its case against Wells and Patriot, had this case proceeded, Wells and Patriot would have likely raised potential obstacles to recovery on motions, including, without limitation, the issues of statute of limitations and equitable tolling/fraudulent

concealment.  While Plaintiffs' Counsel firmly believe this case is strong, no case is foolproof and all cases have inherent risks.  Settling now avoids real risk to the Settlement Class and provides them with immediate recovery.

Lastly, settling now avoids certain and significant additional fees, costs, and delay.  There is no question that continuing to litigate would result in prolonged, costly, and contentious discovery, as well as complex motions and trial practice and potential appeals.  All of this likely would add at least two years to the possibility of relief for the Settlement Class, and possibly much longer. The avoidance of certain delay and costs even further weighs in favor of approval now.

## C.    The Settlement Has No Obvious Deficiencies

The Settlement is fair and reasonable and adequately resolves the dispute with Wells and Patriot, particularly in light of the risks and costs posed to each side by continued litigation.  The Settlement provides substantial benefits in the form of direct payments to Class members.   There are no obvious deficiencies in the proposed Settlement.

## D.    The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class

The Settlement Agreement provides the same relief to the entire Settlement Class.  The Settlement does not provide for preferential treatment to the Class Representatives or any segment of the Class.   The Class Representatives will recover the same amount as all other members of the Settlement Class, which is

separate from the service awards the Class Representatives are entitled to seek. "Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *64-65 (D.N.J. Apr. 8, 2011).

### E.    The Court Should Approve the Proposed Class Notice As It Is the Best Practicable Under the Circumstances

The Court should also approve the parties' proposed Settlement Mailed Notice. *See* Dec. Michael Paul Smith, Ex. A.   The Court stated in *In re NFL Players Concussion Injury Litig.,* 821 F.3d 410 (3d Cir. 2016):

> "As we discussed in evaluating classwide notice, constitutional due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Put another way, the notice of a class settlement 'should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objection to settlement or, when relevant, opting out of the class.'"

*Id.* at 446 (internal citations omitted).

Here, the parties possess the names and addresses of all Settlement Class members and have agreed to have the Settlement Administrator provide individual notice to the Settlement Class via first-class mail.  Individual notice via first class mail is the best notice practicable under the circumstances and satisfies Due Process requirements.  *See* Manual for Complex Litig., Fourth, § 21.311 (citing

14

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n.22 (1978)). Moreover, notice of the Settlement also will be provided on a Settlement Website maintained by an experienced Settlement Administrator, which will provide class members access to additional information and documents related to the case, and is a valuable supplemental notice technique. *See* Manual for Complex Litig., Fourth, § 21.311; Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, p. 4. The mailed Notice is concise and written in plain, easy-to-understand language in a logical, question and answer format. It provides the class definition, a basic description of the nature of the action and the class claims, Class Members' legal rights and options, as well as how to obtain additional information regarding the Settlement. Thus, the proposed mailed Notice satisfies Rule 23 and Due Process.

## IV. THE PROPOSED SETTLEMENT CLASS SATISFIES THE STANDARD FOR CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS

In addition to preliminarily approving the Settlement, Plaintiffs request that this Court make a preliminary determination that the proposed Settlement Class satisfies the four elements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation - and the requirements of Rule 23(b)(3), and conditionally certify the Settlement Class for settlement purposes only.

A.     **The Settlement Class is "adequately defined" and "ascertainable"**

Rule 23(a) includes the implicit requirement the proposed class be "adequately defined and clearly ascertainable." *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012). The proposed class definition must leave class members readily identifiable and proposed class representatives must be members of the defined class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

1.     **The Settlement Class has been identified in pre-certification discovery**

To satisfy the standard of "adequately defined" and "ascertainable," a plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

The Settlement Class is defined as a specific group of borrowers who were all harmed by a specific kickback scheme during a defined time period. Settlement Class members are identified by objective criteria from a particular section on a standardized, legally required government form, the HUD-1. Wells' loan records and Patriot's settlement records identify the borrowers associated with these loans, along with the borrowers' names and mailing addresses, such that providing reliable notice is administratively feasible.

### 2.   The Settlement Class Representatives are Settlement Class members

The Settlement Class Representatives each obtained a "federally related" residential mortgage loan originated or brokered by Wells between January 1, 2013 through April 13, 2015 and Patriot is listed in Section 1100 on each Class Representative's HUD-1.  The Class Representatives were harmed in the same way as other class members by being deprived of kickback-free settlement services and charged prices for settlement services that were artificially inflated by the payment of kickbacks.[3]  Anna Conover, Parrish and Jacquelyn Sheridan, and Bryan and Jacqueline Van Velson fulfill the implicit requirement of Rule 23(a).

---

[3] Congress recognized kickbacks harm borrowers by artificially inflating the prices charged by title companies for settlement services and depriving borrowers of kickback-free settlement services:

> "[T]he advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referrer or his associates have a financial interest in the company that is being recommended. [Because the settlement industry] almost exclusively relies on referrals … the growth of coordinated business arrangements effectively reduce[s] the kind of healthy competition generated by independent settlement service providers.

H.R. Rep. No. 97-532 at 52 (1982); *see also*, U.S. Gov't Accountability Office, *Title Insurance: Actions Needed to Improve Oversight of the Title Industry and Better Protect Consumers* (Apr. 2007) (a "title agents market to those from whom they get consumer referrals, and not to consumers themselves, creating potential conflicts of interest where the referrals could be made in the best interest of the referrer and not the consumer.")

**B.     Settlement Class members are so numerous that joinder is impracticable**

FED. R. CIV. P. 23(a)(1) requires the class be so numerous that joinder of all members would be impracticable.  The size of the Settlement Class in this case is approximately 604 borrowers. Classes of this size are routinely found to satisfy Rule 23(a)(1). *See In re NFL Players Concussion Injury Litig.*, 821 F.3d at 426 ("We have set a rough guidepost in our precedents, however, and stated that numerosity is generally satisfied if there are more than 40 class members.")**.**

**C.     The Settlement Class shares common questions of law or facts**

Rule 23(a)(2) requires there be "questions of law or fact common to the class."  "Commonality does not require perfect identity of questions of law or fact among all class members." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015).  Instead, "even a single common question will do."  *Id*. (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).  "[F]actual differences among the claims of the putative class members do not defeat certification."  *In re Prudential Ins. Co. Am. Sales Practice Litig*., 148 F.3d 283, 310 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999).

"Since a single question of fact suffices to satisfy commonality, it is easily met." *Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018); *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  "Again, th[e] bar is not a high

one," *Reyes*, 802 F.3d at 486 (citation omitted), especially in the context of a settlement class.

"The issues of fact and law common to the Settlement Class arise from the coordinated conduct that is at the heart of the alleged illegal kickback scheme and the essential elements of Plaintiffs' RESPA claims. These include the factual issues of:

- the existence of a referral agreement for the referral of loans for settlement services in exchange for things of value and/or the splitting of fees;

- the actual referral of loans by Wells employees to Patriot pursuant to the referral agreement; and

- the payment by Patriot and the receipt by Wells' employees of things of value in exchange for the referral of loans.

Whether this conduct constitutes a RESPA violation is the fundamental legal issue common to all Settlement Class members.

The Settlement Class members all also have claims for equitable tolling and/or fraudulent concealment, which include issues of fact and law that are common to the class. These fact issues are susceptible of classwide proof and therefore common to all class member's equitable tolling claims.

Finally, the Settlement Class members have suffered the same injuries and share a common statutory measure of damages. 12 U.S.C. § 2607(d)(2); Commonality is satisfied.

**D.    Settlement Class Representatives' claims are typical of the entire Settlement Class**

Rule 23(a)(3) requires class representatives' claims to be "typical" of the class' claims.  As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named Plaintiffs and class members involve the same conduct by the defendant, typicality is established….'" *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 107 (D.N.J. 2012) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001)).

In this case, the claims of Anna Conover, Parrish and Jacquelyn Sheridan, and Bryan and Jacqueline Van Velson are typical of the Settlement Class' claims because they assert the same violations of 12 U.S.C. § 2607 and factual pattern for equitable tolling as alleged by every other Settlement Class member, and their claims arise from the same illegal kickback scheme.  "Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)(quoting *Baby Neal*, 43 F.3d at 58). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980

F.2d 912, 923 (3d Cir. 1992) (quoting 1 Herbert B. Newberg, Newberg on Class Actions § 3.15 at 168 (2d ed. 1985)).

> **E.     The Settlement Class Representatives and their qualified counsel will fairly and adequately protect the interests of the common class**

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named Plaintiffs' and … counsel's ability to fairly and adequately represent class interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 100-101 (3d Cir. 2013) (alterations in original) (quoting *In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 622 F.3d 275, 291 (3d Cir. 2010)). In doing so, "the district court ensures that no conflict of interest exists between the named Plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named Plaintiffs have the ability and incentive to vigorously represent the interests of the class." *Gotthelf*, 525 Fed. Appx. at 101 (citing *In re Comty. Bank*, 622 F.3d at 291). There is a "relatively low threshold" for adequacy of representation. *Hoxworth*, 980 F.2d at 923.

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the

class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).  Both of those criteria are satisfied here.

### 1. The Settlement Class Representatives' interests are aligned with the Settlement Class, and they will diligently prosecute the class claims

As discussed above, the Settlement Class Representatives and the Settlement Class have virtually identical claims that are susceptible to and supported by common pools of evidence. The commonality of the Settlement Class' claims, and the fact that they arise from the same course of conduct and illegal kickback scheme, render the Class Representatives' interests in the litigation substantially similar, if not identical, to the interests of the other Settlement Class members.  Additionally, the Settlement Class Representatives have participated fully in pre-certification discovery and remain diligent and committed participants in the litigation.  The proposed class representatives are adequate representatives of the Settlement Class.

### 2. Plaintiffs' counsel have the experience and ability to represent the Settlement Class

Adequacy of counsel focuses on counsel's competence and experience. Plaintiffs' counsel have substantial experience in complex litigation and class action proceedings. Michael Paul Smith, Melissa L. English, and the law firm of Smith, Gildea, and Schmidt, and co-counsel, Timothy Maloney, Veronica Nannis, and the law firm of Joseph, Greenwald, and Laake, and Bruce D. Greenberg and

the law firm of Lite DePalma Greenberg, LLC routinely litigate complex commercial cases in state and federal courts.   Maloney Dec.; Smith Dec.; Greenberg Dec.  In addition, Mr. Greenberg, Mr. Smith and Mr. Maloney and each their respective firms have litigated class action cases, Mr. Greenberg and his firm in this Circuit and all of the firms in other Circuits.  Maloney Dec.; Smith Dec.; Greenberg Dec.  Mr. Smith and Mr. Maloney were found to meet Rule 23(a)(4) requirements in the certification decision (and all related settlements) in numerous RESPA class action cases.[4]   Rule 23(a)(4)'s adequacy of counsel requirement is met.

## F.    The Settlement Class meets the requirements of Rule 23(b)(3)

Besides meeting Rule 23(a), Plaintiffs also meet the requirements of Rule 23(b)), which has two components: predominance and superiority.  *See* FED. R. CIV. P. 23(b)(3).  "Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273,

---

[4] The cases include *Fangman v. Genuine Title*, No. RDB-14-0081 (D. Md. 2014) resulting in settlements with at least seven different lenders and *Polombaro, et al v. Emery Federal Credit Union* No. 1:15-cv-792-SJD (Southern District of Ohio), as well as lead counsel in multi-plaintiff litigation, *Kober, et al.  v. Presidential Bank*, Case Nos.:  C-10-12707, C-10-13043, C-10-12871, C-10-13041, C-10-13041, and C-10-12705 in the Circuit Court for Baltimore County.

297 (3d Cir. 2011) (en banc) (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)).  When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required.  *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see FED. R. CIV. P. 23(b)(3)(D), for the proposal is that there be no trial.").

The Settlement Class satisfies Rule 23(b)(3). The common legal and factual issues "predominate" over individual issues and the class action is the "superior" method "for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

<strong>1.  Because the Settlement Class' claims arise from the same alleged illegal kickback scheme, the common class issues related to Settlement's liability predominate</strong>

The Third Circuit has reiterated that the focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan,* 667 F.3d at 298.  "To determine whether common issues predominate over questions affecting only individual members, the Court must look at each claim upon which the [p]laintiff seeks recovery and … determine whether

generalized evidence exists to prove the elements of the plaintiff's claims on a simultaneous, class-wide basis, or whether proof will be overwhelmed by individual issues." *O'Brien v. Brian Research Labs, LLC,* 2012 WL 3242365, at *8 (D.N.J. Aug. 9, 2012) (citations omitted). Predominance "does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances." *Reyes*, 802 F.3d at 489.

Here, defendants' conduct was common as to all of the class members, and all of the class members were harmed by the defendants' conduct:  the Settlement Class' RESPA claims all arise out of the same kickback scheme through which Patriot and Wells violated § 2607 in an identical way for each Settlement Class Member such that the common factual and legal issues relevant to the liability of Patriot and Wells – the existence of a referral agreement, actual referrals of a loan, and the payment of a thing of value received and given under the referral agreement - are at the heart of the litigation.  *See In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 406 (3d Cir. 2015)("The elements of the Plaintiffs' RESPA claims that are 'essential'— namely violations of the anti-kickback and unearned fee provisions of RESPA — can potentially be proven with common evidence").  The same is true as to the Settlement Class' claims for equitable tolling and fraudulent concealment which are inextricably linked to the kickback scheme.

In addition, the common elements of the class's claims are likely to be proven by evidence of Wells' and Patriot's conduct as it relates to the class, rather than any particular borrower.  RESPA claims are not required to be proved on borrower-specific evidence.  *See Freeman v. Quicken Loan, Inc.*, 566 U.S. 624, 636 (2012) ("thing of value" underlying a RESPA claim need not be tied in any respect to a charge paid by a particular consumer); *Edwards v. First Am. Corp.,* 798 F.3d 1172, 1181 (9th Cir. 2015), *cert. dismissed sub nom. First Am. Fin. Corp. v. Edwards*, 136 S. Ct. 1533 (2016) ("Plaintiff can state a claim under RESPA 8(a) by alleging that First American paid a lump sum of money to each captive title agency (thing of value) and – in exchange for that money – each title agency agreed to refer First American future insurance…") (reversing denial of certification and remanding).

Similarly, the regulations implementing RESPA specifically permit violations to be proven by circumstantial evidence of a "practice, pattern or course of conduct," such that "when a thing of value is received repeatedly and is connected in any way with the volume or value of the business referred, the receipt of the thing of value is evidence that it is made pursuant to an agreement or understanding for the referral of business." 12 C.F.R. §1024.14(e).  Therefore, the factual issues of the existence Referral Agreements, the referral of loans according to those Agreements, and the payment by Patriot and the receipt by Wells'

26

employees of kickbacks under the Referral Agreements predominate. RESPA's statutory damages measure is integrated into the Settlement Benefits calculation for each Settlement Class Member, carrying into the Settlement Agreement this common interest and further supporting the conclusion that a class action is a superior method of resolving these claims.

Further, RESPA's common statutory measure of damages would predominate over any individualized damage calculations or variations in the amount paid for settlement charges.

### 2. A class action is the superior means of adjudicating the Class' claims

Under the second prong of Rule 23(b)(3), certification is appropriate where "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Superiority requires the Court to consider whether "a class action is a superior method of fairly and efficiently adjudicating the controversy." *Sullivan,* 667 F.3d at 296. Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 457 (D.N.J. 2008). Since manageability is not a consideration in a settlement class context, these factors include: "(i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members;

27

[and] (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." *Id.* (quoting FED. R. CIV. P. 23(b)(3)).

The Settlement Class' claims are ideal for class action litigation under Rule 23(b)(3). The Settlement Class' claims are predicated on a pattern of practice at Wells and Patriot such that the individual members' class claims are inextricably tied to proof of the wider kickback scheme.  As a result, no one Settlement Class member has a strong interest in controlling the litigation through separate actions, which would entail duplicative claims, duplicative discovery, and duplicative trial testimony and witnesses.

Each Settlement Class member is entitled to a statutorily defined measure of damages that is tied to the settlement charges reflected on each borrower's HUD-1 settlement statement.   This measure of damages is applicable to all of the Settlement Class members' claims, whether brought as a class or as individual claims. Thus, no Settlement Class member has a damages-based interest that would be better served by an individual action and, by proceeding in a class action, class members obtain the benefit of representation by experienced consumer rights attorneys. Further, as is common with class actions, the statutory measure of damages in this case produces a relatively small amount per Settlement Class member that would not likely justify many class members bringing individual claims—the class action form serves each individual member's interest because it

provides the economic justification for pursuing claims.

Additionally, Plaintiffs are not aware of any other related litigation by any Settlement Class member, so multi-district litigation is unlikely. Because all of the Settlement Class members have common claims and interests, the class members do not have interests in individually controlling the prosecution of their claims against Wells or Patriot. In addition, each Settlement Class Member's claim is based on strikingly similar fact patterns and is ideal for proof by representative evidence and witnesses.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) preliminarily certifying a Settlement Class pursuant to FED. R. CIV. P. 23(a) and 23(b)(3); (2) preliminarily approving the Settlement Agreement; (3) directing notice to Settlement Class members consistent with the Notice Plan in the Settlement Agreement; and (4) scheduling a Final Approval Hearing.

Dated: October 31, 2019

**LITE DEPALMA GREENBERG, LLC**

   */s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

**JOSEPH, GREENWALD & LAAKE, P.A.**

*/s/ Timothy F. Maloney*
Timothy F. Maloney
(admitted *Pro Hac Vice*)
Veronica B. Nannis
(admitted *Pro Hac Vice*)
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770
Telephone: (301) 220-2200
tmaloney@jgllaw.com
vnannis@jgllaw.com

**SMITH, GILDEA & SCHMIDT, LLC**

   */s/ Michael Paul Smith*
(admitted *Pro Hac Vice*)
Melissa L. English
(admitted *Pro Hac Vice*)
600 Washington Avenue, Suite 200
Towson, MD  21204
Telephone: (410) 821-0070
mpsmith@sgs-law.com
menglish@sgs-law.com